F I L E

MAR 1 1 2011

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

THE BAG BOY COMPANY, LLC,            )
                                     )
              Plaintiff,             )
                                     )
                                     )
       v.                            )       Civil Action No. 3:11 cv161
                                     )
SUN MOUNTAIN SPORTS, INC.,           )
                                     )
              Defendant.             )
_____)

## COMPLAINT

Plaintiff The Bag Boy Company, LLC, by counsel, alleges as follows:

1.     This is an action for a declaratory judgment of patent non-infringement and invalidity brought pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, and false patent marking pursuant to 35 U.S.C. § 292(a) between Plaintiff The Bag Boy Company, LLC ("Bag Boy"), of Richmond, Virginia, and Sun Mountain Sports, Inc. ("Sun Mountain"), of Missoula, Montana, relating to U.S. Design Patent Nos. D596,365 and D596,821.

## PARTIES, JURISDICTION AND VENUE

2.     Bag Boy is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business located at 8575 Magellan Parkway, Suite 1000, Richmond, Virginia 23027.

3.     Defendant Sun Mountain is a corporation organized and existing under the laws of Montana, and has a principal place of business at 301 North 1st Street West, Missoula, Montana 59802. Sun Mountain distributes golf carts, golf bags and other golf-related equipment

for sale throughout the Commonwealth of Virginia. According to Sun Mountain's internet website, www.sunmountain.com/retail-locator.php, the following retail outlets sell Sun Mountain golf carts, golf bags and other golf-related equipment in the City of Richmond, Virginia: The Country Club of Virginia, 709 S. Gaskins Road, Richmond, Virginia 23233; Jefferson Lakeside Club, 1700 Lakeside Avenue, Richmond, Virginia 23228; Mulligans, A Golf Shop, 9127-R W. Broad Street, Richmond, Virginia 23294; Stonehenge Golf & Country Club, 1000 Farnham Drive, Richmond, Virginia 23236; and Willow Oaks Country Club, 6228 Forest Hill Avenue, Richmond, Virginia 23225. Upon information and belief, Sun Mountain receives substantial revenue from the sale of its golf carts, golf bags and other golf-related equipment in the Commonwealth of Virginia.

4.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over Sun Mountain because Sun Mountain transacts substantial business in the Commonwealth of Virginia and because Sun Mountain is subject to jurisdiction under Virginia Code § 8.01-328.1.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because (i) a substantial part of property that is the subject of the action is situated in the District, (ii) at least some of the events giving rise to this action occurred in this District, and (iii) Sun Mountain is subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

**A.      History of relationship between Bag Boy and Sun Mountain**

7.      The Bag Boy Company has been making golf-related products since 1946. Bag Boy has become one of the most respected golf brands by building a reputation for innovation,

quality and durability. While Bag Boy first started with golf bag pull carts, it expanded its products over the years and is a brand leader in the golf cart, golf bag and other golf-related equipment markets.

8.    Bag Boy and Sun Mountain have competed in the golf cart, golf bag and other golf-related equipment markets for many years.

9.    On March 12, 2008, Michael Hughes, outside legal counsel for Sun Mountain, sent a letter to David Boardman, President and CEO of Bag Boy, asserting that Bag Boy's COSMIC™ golf bag "infringes every claim of the '534 patent" and "[t]he straps on that bag appear to be a nearly identical copy of [Sun Mountain's] invention." In its March 12, 2008 letter, Sun Mountain demanded that Bag Boy "immediately cease and desist from all manufacture, use or sale of infringing golf bag systems and to destroy all such items in inventory," as well as provide a full accounting and reparations "for each and every infringing item which has been manufactured by or for, delivered to or passed through your company or its distributors." Further, Sun Mountain threatened that "in the absence of full cooperation [from Bag Boy], [Sun Mountain] will do what is needed to protect its rights in this matter."

10.    On May 5, 2008, Mr. Boardman sent an email to Rick Reimers, the owner of Sun Mountain, responding to the March 12, 2008 letter and inquiring generally about Sun Mountain's willingness to license the '534 patent if Bag Boy determined that its products, despite representations to the contrary from its suppliers, infringed the '534 patent.

11.    On May 14, 2008, counsel for Sun Mountain responded to Mr. Boardman's email by rebuffing Bag Boy's inquiry regarding licensing and again demanding that Bag Boy "cease all sales, advertisement and distribution of infringing products," as well as pressing for "[d]estruction of current inventory...." Again, Sun Mountain threatened "in the absence of

cooperation [from Bag Boy], Sun Mountain will do what is needed to protect its rights in this matter."

12. After receiving the March 12, 2008 and May 14, 2008 letters from Sun Mountain, Bag Boy analyzed the '534 patent and compared it with the accused Bag Boy golf bags. As a result of this investigation, Bag Boy concluded that its golf bags do *not* infringe any of the claims of the '534 patent and, further, that the '534 patent is invalid.

13. Given Sun Mountain's unwillingness to even discuss licensing of its patent and its repeated demands that Bag Boy destroy all products accused of infringing the '534 patent, Bag Boy concluded that Sun Mountain's threat of litigation against Bag Boy was real and imminent. Rather than continuing to have the threat of litigation hang over it, Bag Boy filed a Complaint in this Court on or about June 2, 2008, seeking a declaratory judgment of non-infringement and patent invalidity.

14. On or about August 1, 2008, Bag Boy and Sun Mountain reached an agreement resolving their differences and dismissing Bag Boy's Complaint.

15. Until February 15, 2011, Sun Mountain had no further communications with Bag Boy about any issues relating to Sun Mountain's products or patents since 2008.

**B. Sun Mountain's Second Claim that Bag Boy Infringed its Patents**

16. On February 15, 2011, Michael Hughes, outside legal counsel for Sun Mountain, sent a letter to David Boardman, President and CEO of Bag Boy, again accusing Bag Boy of violating Sun Mountain's patents. Specifically, Sun Mountain "put [Bag Boy] on official notice [] of the various patent rights of [Sun Mountain] with respect to four-wheeled collapsible bag carts," accused Bag Boy of "closely copy[ing]" Sun Mountain products allegedly covered by U.S. Design Patent Nos. D596,365 (the "'365 Patent") and D596,821 (the "'821 Patent"), and

U.S. Patent Application Publication US 2010/0052275 (the "'275 Application"), and warned Bag Boy to "make certain that your company's relevant personnel are familiar with the potential liabilities involved in this situation...."

17.     Bag Boy has analyzed the '365 Patent and the '821 Patent and concluded that its four-wheeled collapsible bag carts do not infringe either of these patents because the design of the Bag Boy carts has several significant differences from the '365 Patent and the '821 Patent in both the folded and unfolded configurations.     Likewise, Bag Boy has analyzed the '275 Application and concluded that its four-wheeled collapsible bag carts would not infringe any patent that reasonably might issue based on the pending claims of the '275 Application and the known prior art.

18.     Bag Boy's analysis also revealed that the '821 Patent and the '365 Patent are invalid because the ornamental designs in the patents are entirely dictated by functional considerations and, therefore, the '821 Patent and the '365 Patent are invalid.     A configuration that is the result of functional considerations only is not patentable as an ornamental design for the simple reason that it is not "ornamental," i.e., it was not created for the purpose of ornamenting.

19.     Moreover, to the extent that the '821 Patent and the '365 Patent contain features that are not functional, any non-functional features of the '821 Patent and the '365 Patent were present in the prior art which renders these design patents invalid under 35 U.S.C. 102 and 103.

20.     Given Sun Mountain's statements in its February 15, 2011 letter and the prior adversarial relationship between the parties, Bag Boy has a reasonable apprehension of litigation and Bag Boy is placed in the position of either pursuing allegedly illegal behavior or abandoning the four-wheeled collapsible bag carts that Bag Boy has a right to produce and sell.     While the

February 15, 2011 letter avoids using the word "infringement," there can be little doubt as to Sun Mountain's intent given that its letter: (a) came from the same outside legal counsel who rebuffed Bag Boy's licensing inquiries and threatened litigation in the prior dispute between the parties; (b) directly accuses Bag Boy of "closely copy[ing]" one of Sun Mountains successful products; (c) specifically identifies and provides copies of certain patents and identifies a particular product that allegedly is protected by the patents, particularly the Micro-Cart, a four-wheeled collapsible bag cart, the same product that Sun Mountain accuses Bag Boy of "closely copy[ing];" and (d) warns Bag Boy of the "potential liabilities involved in this situation" related to Bag Boy's alleged copying of Sun Mountain's products.

21.     Under the circumstances, Bag Boy has no reason to expect that Sun Mountain would respond reasonably to any inquiries by Bag Boy, and every reason to believe that Sun Mountain will initiate litigation against Bag Boy if Bag Boy does anything other than abandon the four-wheeled collapsible bag carts that Bag Boy has a right to produce and sell. Accordingly, Bag Boy reasonably apprehends and anticipates that Sun Mountain will initiate litigation against Bag Boy asserting infringement of the '365 Patent and/or the '821 Patent, thus giving rise to an actual, substantial and continuing justiciable case or controversy between Bag Boy and Sun Mountain regarding the infringement and validity of the '365 Patent and the '821 Patent.

C.     **Sun Mountain's False Patent Marking**

22.     After receiving Sun Mountain's February 15, 2011, letter, Bag Boy reviewed Sun Mountain's '365 Patent and '821 Patent and the products which Sun Mountain has marked with the '365 Patent and/or '821 Patent numbers, and concluded that Sun Mountain has violated 35 U.S.C. § 292(a) by using false patent markings in advertising products for sale with the intent to deceive the public.

23. The patent marking statute, 35 U.S.C. § 287(a) (the "Patent Marking Statute"), and the false patent marking statute, 35 U.S.C. § 292 (the "False Marking Statute"), exist to insure that the public has accurate information on the existence of patent rights in articles.

24. The U.S. Court of Appeals for the Federal Circuit explained the purposes of the Patent Marking Statute in *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998), as: (1) helping to avoid innocent infringement, (2) encouraging patentees to give notice to the public that the article is patented, and (3) aiding the public to identify whether an article is patented.

25. False marking of unpatented articles as "patented" is injurious to the public interest because it deters innovation, stifles competition in the marketplace, and causes unnecessary investment in design-arounds and/or costs incurred to analyze the validity or enforceability of products purportedly covered by a patent. Moreover, false patent markings can deceive the public into believing that a product possesses purportedly superior designs or utilitarian features that are unique to such article and not available in substitute articles from other producers, thus inducing consumer demand for the marked product to the detriment of competitors.

26. "The possession and assertion of patent rights are 'issues of great moment to the public.'... A patent by its very nature is affected with a public interest." *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery*, 324 U.S. 806, 816 (1945). Moreover, "[a]n unpatentable article, like an article on which the patent has expired, is in the public domain and may be made and sold by whoever chooses to do so." *Sears Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964); *Compco Corp. v. Day-Brite Lighting*, 376 U.S. 234 (1964).

27.    Given the public's interest in the patent system, Congress has empowered "any person" to file a false marking action in federal court under 35 U.S.C. § 292, regardless of whether the person acting has adverse legal interests to the patentee or has sustained an injury-in-fact. Indeed, Congress's interest in preventing false marking was so great that it enacted a statute which permits members of the public to sue on behalf of the government and thereby help control false marking.

28.    A "design patent" protects the way an article looks (35 U.S.C. § 171), whereas a "utility patent" protects the way an article is used and works (35 U.S.C. § 101). The patent law provides for the granting of design patents to any person who has invented any new, original and ornamental design for an article of manufacture. A design patent protects only the appearance of the article and not structural or utilitarian features. A design patent application may only have a single claim (37 CFR § 1.153) which is usually comprised of drawings of the claimed design.

29.    Upon information and belief, at some point in 2008 or 2009, Sun Mountain began marking its four-wheeled collapsible bag carts with the '365 Patent number and/or the '821 Patent number by stamping it on the four-wheeled collapsible bag carts themselves and including it on the product labels and inserts and other marketing materials. For example, on Sun Mountain's MicroCart product, the four-wheeled collapsible bag cart is stamped "Patent No. U.S. D596,365 & D596,821" and the product literature accompanying the cart states "U.S. Patents # D596,821 & D596,365."

30.    Sun Mountain sells, offers to sell, has sold and/or has offered to sell products which it has marked or otherwise advertised as being covered by the '365 Patent and/or the '821 Patent including, but not limited to, its MicroCart products (the "Offending Products"). The

Offending Products are not, in fact, covered by or within the claim of the '365 Patent and '821 Patent.

31. Sun Mountain knows or reasonably should know that its '365 Patent and '821 Patent does not cover the Offending Products. The '365 Patent and the '821 Patent are design patents that cover only the ornamental features of the specific design shown in the drawings set forth in each issued patent and no other design.

32. As Sun Mountain knows or reasonably should know, the ornamental design of the Offending Products differ from the ornamental design shown in the '821 Patent in at least the following ways:

a. The cup holder has been moved and redesigned on the Offending Products.

b. A ball holder has been added to the bottom of the valuables tray on the Offending Products.

c. The wheel design has been changed from solid wheels to spoke wheels on the Offending Products.

d. The bag grasping arm design has been changed to include hinges and holes on the Offending Products.

e. Bolts extend through the handle bracket at the bottom of the Offending Products that are not included in the '821 Patent.

f. The bag foot has a different hole and line pattern on top and added structure on the bottom on the Offending Products.

g. Four brackets on the front axle shown on the '821 Patent have been removed on the Offending Products.

h. The Offending Products have a different locking pedal design.

i. The Offending Products have a different locking member on the handle folding mechanism.

j. the pattern design shown on the back of the valuables tray of the '821 Patent has been removed from the Offending Products.

k. The Offending Products include the addition of a parking brake that is not shown in the '821 Patent.

l. The Offending Products include the addition of small rear brackets inside of the rear wheels that are not shown in the '821 Patent.

m. The Offending Products have an additional pencil holding hole not shown in the '821 Patent.

33.     As Sun Mountain knows or reasonably should know, the Offending Products

differ from the '365 Patent in at least the following ways:

a. The '365 Patent shows a cup holder prominently, whereas the Offending Products have a ball holder where the cup holder is shown in the patent.

b. The '365 Patent shows semicircular metal plate for clipping scorecards, whereas the Offending Products have a rectangular metal plate.

c. The '365 Patent and the Offending Products have different handle locking mechanisms.

d. The '365 Patent shows solid wheels whereas the Offending Products have three-spoke wheels.

e. The bag grasping bracket extending beyond the front of wheels in the '365 Patent but not in the Offending Products.

f. The locking mechanism, wheels and locking mechanism shown in Figure 2 of the '365 Patent differ from the Offending Products.

g. The cup holder and bracket hiding a portion of wheels shown in Figure 3 of the '365 Patent differ from the Offending Products.

h. The wheel design, cup holder position/design, and handle locking mechanism shown in Figure 4 of the '365 Patent differ from the Offending Products.

i. The cup holder, ball holder, pencil hole, wheel design, front bracket, handle locking mechanism shown in Figure 5 of the '365 Patent differ from the Offending Products.

j. The bag grasping bracket, hole/line design on the bag foot, the addition of a parking brake, the tread design, and the pattern on bag of valuables tray and cup holder shown in Figure 6 of the '365 Patent differ from the Offending Products.

34.     Sun Mountain is a sophisticated company that has obtained multiple patents and has sought to enforce such patents against third parties through litigation. Throughout these efforts, Sun Mountain has engaged and been represented by competent legal counsel who would have known that the '821 Patent and the '365 Patent did not (and do not) cover the Offending Products and would have advised Sun Mountain against marking the Offending Products or advertising that the Offending Products are or were covered by the '821 Patent and the '365 Patent.

35.     Despite its knowledge that the '821 Patent and the '365 Patent did not (and do not) cover the Offending Products, Sun Mountain has advertised and continues to advertise the Offending Products as being covered by or subject to the '821 Patent and the '365 Patent with the intent to mislead the public into believing (a) that Sun Mountain controls the intellectual property embodied in the Offending Products, (b) that its products are of a superior quality to its competitors' products, including Bag Boy's products, and (c) that the Offending Products possess design or utilitarian features that are unique to such articles, and not available in substitute articles from other producers, thus inducing consumer demand for the marked product to the detriment of competitors, including Bag Boy. Sun Mountain falsely marks advertisements for the Offending Products in printed materials and catalogs and on the internet.

36.     Bag Boy, as a competitor with Sun Mountain in the golf cart market, has been injured by Sun Mountain's false marking of the Offending Products. By marking its products with the '821 Patent and the '365 Patent, Sun Mountain has misled consumers into believing that its golf cart products have a superior design or utilitarian features that are unique to the Offending Products and that such purportedly superior design and/or utilitarian features are not

11

available in substitute articles of Bag Boy (or other golf cart manufacturers), thus inducing consumer demand for the Offending Products to the detriment of Bag Boy's golf cart products.

## COUNT I
**(Action for Declaratory Judgment of Non-Infringement of U.S. Patent No. D596,821)**

37.    Bag Boy incorporates by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

38.    As a result of the actions and accusations detailed above, an actual and present controversy exists between Bag Boy and Sun Mountain as to whether Bag Boy's four-wheeled collapsible bag carts infringe the '821 Patent purportedly owned by Sun Mountain.

39.    Bag Boy's four-wheeled collapsible bag carts do not infringe the '821 Patent.

40.    Bag Boy is entitled to a judgment declaring that its four-wheeled collapsible bag carts do not infringe the '821 Patent.

41.    Bag Boy has suffered damage, injury, and harm from Sun Mountain's conduct, including but not limited to the taint placed on Bag Boy's four-wheeled collapsible bag carts and Bag Boy in general as a result of Sun Mountain's baseless claims of copying and infringement, and Bag Boy will suffer further damage, injury, and harm unless the Court adjudicates the controversy between the parties and issues a declaratory judgment of non-infringement of the '821 Patent.

## COUNT II
**(Action for Declaratory Judgment of Non-Infringement of U.S. Patent No. D596,365)**

42.    Bag Boy incorporates by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

43.     As a result of the actions and accusations detailed above, an actual and present controversy exists between Bag Boy and Sun Mountain as to whether Bag Boy's four-wheeled collapsible bag carts infringe the '365 Patent purportedly owned by Sun Mountain.

44.     Bag Boy's four-wheeled collapsible bag carts do not infringe the '365 Patent.

45.     Bag Boy is entitled to a judgment declaring that its four-wheeled collapsible bag carts do not infringe the '365 Patent.

46.     Bag Boy has suffered damage, injury, and harm from Sun Mountain's conduct, including but not limited to the taint placed on Bag Boy's four-wheeled collapsible bag carts and Bag Boy in general as a result of Sun Mountain's baseless claims of copying and infringement, and Bag Boy will suffer further damage, injury, and harm unless the Court adjudicates the controversy between the parties and issues a declaratory judgment of non-infringement of the '365 Patent.

**COUNT III**
**(Action for Declaratory Judgment of Invalidity of U.S. Patent No. D596,821)**

47.     Bag Boy incorporates by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

48.     As a result of the actions and accusations detailed above, an actual and present controversy exists between Bag Boy and Sun Mountain with respect to the validity of the '821 Patent.

49.     The claim of the '821 Patent is invalid for failure to comply with the requirements of United States patent laws, and in particular for failure to comply with 35 U.S.C. §§ 101, 102, 103, and/or 112.

50.     Bag Boy is entitled to a judgment declaring that the claim in the '821 Patent is invalid.

51.    Bag Boy has suffered damage, injury, and harm from Sun Mountain's conduct, including but not limited to the taint placed on Bag Boy's golf cart and Bag Boy in general as a result of any claims of infringement, and Bag Boy will suffer further damage, injury, and harm unless the Court adjudicates the controversy between the parties and issues a declaratory judgment of invalidity of the claim in the '821 Patent.

## COUNT IV
**(Action for Declaratory Judgment of Invalidity of U.S. Patent No. D596,365)**

52.    Bag Boy incorporates by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

53.    As a result of the actions and accusations detailed above, an actual and present controversy exists between Bag Boy and Sun Mountain with respect to the validity of the '365 Patent.

54.    The claim of the '365 Patent is invalid for failure to comply with the requirements of United States patent laws, and in particular for failure to comply with 35 U.S.C. §§ 101, 102, 103, and/or 112.

55.    Bag Boy is entitled to a judgment declaring that the claim in the '365 Patent is invalid.

56.    Bag Boy has suffered damage, injury, and harm from Sun Mountain's conduct, including but not limited to the taint placed on Bag Boy's golf cart and Bag Boy in general as a result of any claims of infringement, and Bag Boy will suffer further damage, injury, and harm unless the Court adjudicates the controversy between the parties and issues a declaratory judgment of invalidity of the claim in the '365 Patent.

## COUNT V
### (False Marking of U.S. Patent No. D596,821)

57.    Bag Boy incorporates by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

58.    Sun Mountain intentionally marked its Offending Products with the '821 Patent, despite knowing that the claim of the '821 Patent does not cover the Offending Products and cannot afford patent protection to the Offending Products, with the intent to deceive the public.

59.    Sun Mountain intentionally advertised the Offending Products as being covered by the '821 Patent, despite knowing that the claim of the '821 Patent does not cover the Offending Products and cannot afford patent protection to the Offending Products, with the intent to deceive the public.

60.    Sun Mountain knew or reasonably should have known that using the '821 Patent number on products not covered by or within the claims of the '821 Patent violated federal patent marking laws, which authorize marking or advertising only existing and enforceable patent or patent pending claims on a "patented" article.

61.    Each false marking by Sun Mountain damages Bag Boy and the public as follows:

(a)    by discouraging and deterring persons and companies from commercializing competing products or pursuing development of competing products and or related products, thus stifling competition and increasing the cost of goods;

(b)    by misleading competitors and consumers into believing that Sun Mountain controls the intellectual property embodied in the Offending Products;

(c)    by causing unnecessary investment in design around or costs incurred to analyze the validity or enforceability of products purportedly covered by a patent; and

(d)    by misleading consumers into believing that the Offending Products

possess design or utilitarian features that are unique to such articles, and not available in substitute articles from other producers, thus inducing consumer demand for the Offending Products.

62.   By falsely marking and advertising its products with the '821 Patent, Sun Mountain has wrongfully and illegally asserted a patent monopoly which it does not possess and, as a result, has benefited by limiting competition with respect to the Offending Products, which benefit has come at the expense of Bag Boy, Sun Mountain's other competitors, and the public.

63.   Sun Mountain's actions are in violation of 35 U.S.C. § 292.

## CLAIM VI
### (False Marking of U.S. Patent No. D596,365)

64.   Bag Boy incorporates by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

65.   Sun Mountain intentionally marked its Offending Products with the '365 Patent, despite knowing that the claim of the '365 Patent does not cover the Offending Products and cannot afford patent protection to the Offending Products, with the intent to deceive the public.

66.   Sun Mountain intentionally advertised the Offending Products as being covered by the '365 Patent, despite knowing that the claim of the '365 Patent does not cover the Offending Products and cannot afford patent protection to the Offending Products, with the intent to deceive the public.

67.   Sun Mountain knew or reasonably should have known that using the '365 Patent number on products not covered by or within the claims of the '365 Patent violated federal patent marking laws, which authorize marking or advertising only existing and enforceable patent or patent pending claims on a "patented" article.

68.   Each false marking by Sun Mountain damages Bag Boy and the public as follows:

(a) by discouraging and deterring persons and companies from commercializing competing products or pursuing development of competing products and or related products, thus stifling competition and increasing the cost of goods;

(b) by misleading competitors and consumers into believing that Sun Mountain controls the intellectual property embodied in the Offending Products;

(c) by causing unnecessary investment in design around or costs incurred to analyze the validity or enforceability of products purportedly covered by a patent; and

(d) by misleading consumers into believing that the Offending Products possess design or utilitarian features that are unique to such articles, and not available in substitute articles from other producers, thus inducing consumer demand for the Offending Products.

69. By falsely marking and advertising its products with the '365 Patent, Sun Mountain has wrongfully and illegally asserted a patent monopoly which it does not possess and, as a result, has benefited by limiting competition with respect to the Offending Products, which benefit has come at the expense of Bag Boy, Sun Mountain's other competitors, and the public.

70. Sun Mountain's actions are in violation of 35 U.S.C. § 292.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Bag Boy demands the following relief:

A.   Entry of a declaratory judgment that Bag Boy has not infringed the '821 Patent;

B.   Entry of a declaratory judgment that Bag Boy has not infringed the '365 Patent;

C.   Entry of a declaratory judgment that the claim of the '821 Patent is invalid;

D.   Entry of a declaratory judgment that the claim of the '365 Patent is invalid;

E.   Judgment that Sun Mountain has violated 35 U.S.C. § 292 by falsely advertising

that its Offending Products are "patented," knowing that the '821 Patent does not apply to the Offending Products, for the purpose of deceiving the public;

F.     Judgment that Sun Mountain has violated 35 U.S.C. § 292 by falsely advertising that its Offending Products are "patented," knowing that the '365 Patent does not apply to the Offending Products, for the purpose of deceiving the public;

G.     An order fining Sun Mountain for false marking of its Offending Products in an amount which is reasonable in light of the total revenue and gross profit derived from the sale of falsely marked goods and the degree of intent to falsely mark which is proven, with half of the fine going to the use of the United States and the other half going to Bag Boy;

H.     An order preliminarily and permanently enjoining Sun Mountain, its officers, agents, servants, employees, contractors, suppliers and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from committing new acts of false patent marking and to cease all existing acts of false patent marking immediately;

I.     A determination that this case is "exceptional" under 35 U.S.C. § 285, thus warranting an award of attorneys' fees to Bag Boy;

J.     An award in favor of Bag Boy, and against Sun Mountain, for the costs incurred by Bag Boy in bringing and maintaining this action, including reasonable attorneys' fees and costs; and

K.     Such other, further, and different relief as may be just and appropriate.

A jury trial is demanded on all issues.

THE BAG BOY COMPANY, LLC

_____
Of Counsel

Robert A. Angle, VSB #37691
Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
Troutman Sanders Building
1001 Haxall Point
Richmond, Virginia 23219
Telephone:  804-697-1200
Facsimile:  804-697-1339
Email:  robert.angle@troutmansanders.com
Email:  dabney.carr@troutmansanders.com

2029101v1